UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAVI KUMARARATNE,<br>derivatively on behalf of<br>WILLBROS GROUP, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN T. MCNABB, II, EDWARD<br>J. DIPAOLO, MICHAEL C.<br>LEBENS, DANIEL E. LONERGAN,<br>ROBERT L. SLUDER, S. MILLER<br>WILLIAMS, ROBERT R. HARL,<br>and VAN A. WELCH,<br><br>Defendants,<br><br>- and -<br><br>WILLBROS GROUP, INC., a<br>Delaware corporation,<br><br>Nominal Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. _____<br><br>**VERIFIED SHAREHOLDER<br>DERIVATIVE COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

BOTTINI & BOTTINI, INC.
    Francis A. Bottini, Jr.
    California State Bar No. 175783
    Albert Y. Chang
    California State Bar No. 296065
    Yury A. Kolesnikov
    California State Bar No. 271173
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:    (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
ykolesnikov@bottinilaw.com

SPONSEL MILLER GREENBERG PLLC
    Roger B. Greenberg
    Texas State Bar No. 08390000
    Federal I.D. No. 3932
    Thane T. Sponsel III
    Texas State Bar No. 24056361
    Federal I.D. No. 690068
50 Briar Hollow Lane
Suite 370 West
Houston, Texas 77027
Telephone:   (713) 892-5400
Facsimile:    (713) 892-5401
sponsel@smglawgroup.com
roger@smglawgroup.com

*Attorneys for Plaintiff Ravi Kumararatne*

**Table of Contents**

I.     NATURE OF THE ACTION ....................................................................1

II.    JURISDICTION AND VENUE ...........................................................4

III.   THE PARTIES ......................................................................................4

     A.     Plaintiff..........................................................................................4

     B.     The Individual Defendants...........................................................4

           (1)    The Director Defendants....................................................4

           (2)    The Officer Defendants ......................................................6

     C.     The Nominal Defendant ................................................................7

IV.   FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS ............7

     A.     General Duties as Officers and Directors of Willbros ........................................................................................7

     B.     The Code of Business Conduct and Ethics....................................9

     C.     The Code of Ethics for CEO and Senior Financial Officers ......................................................................................11

     D.     The Audit Committee Charter ...................................................11

     E.     The Duty of Reasonable and Prudent Supervision ....................13

V.    CONSPIRACY AND CONCERTED ACTION.......................................14

VI.   BREACHES OF FIDUCIARY DUTIES.................................................15

VII.  SUBSTANTIVE ALLEGATIONS .........................................................16

     A.     The Oil & Gas Segment Constitutes Willbros's Core Business ....................................................................................16

     B.     The Individual Defendants Caused Willbros to Disseminate False and Misleading Information Regarding Its Financial Performance in the Oil & Gas Segment ....................................................................................18

     C.     The Individual Defendants Caused Willbros to Disclose Errors in Its Financial Reporting and the Necessity to Restate Its Financial Results ................................23

VIII. DAMAGES TO WILLBROS ..................................................................26

IX.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS ..............27

i

A.      All Directors Face a Substantial Likelihood of
Liability ......................................................................... 29

B.      The Director Defendants Lack Independence
Because They Failed to Terminate the Employment
of Harl and Gibson ........................................................ 30

C.      McNabb Is Interested and Lacks Independence........................ 31

D.      McNabb, DiPaolo, Lebens, and Lonergan Are
Interested and Lack Independence Due to Their
Intertwining Relationships............................................ 32

E.      The Audit Committee Defendants – DiPaolo,
Lonergan, and Williams – Are Interested and Lack
Independence .................................................................. 33

F.      The Board Members Lack Independence for
Additional Reasons ....................................................... 36

X.      CAUSES OF ACTION .............................................................. 37

Count I
Breaches of Fiduciary Duties
Against All Individual Defendants. ....................................... 37

Count II
Unjust Enrichment
Against All Individual Defendants ............................................ 39

Count III
Gross Mismanagement
Against All Individual Defendants ............................................ 39

XI.    PRAYER FOR RELIEF ........................................................ 40

DEMAND FOR JURY TRIAL .......................................................... 41

Plaintiff Ravi Kumararatne ("Plaintiff"), derivatively and on behalf of nominal defendant Willbros Group, Inc. ("Willbros" or the "Company"), files this Verified Shareholder Derivative Complaint against defendants John T. McNabb, II, Edward J. DiPaolo, Michael C. Lebens, Daniel E. Lonergan, Robert L. Sluder, S. Miller Williams, Robert R. Harl, and Van A. Welch (collectively, the "Individual Defendants") for breaches of fiduciary duties, unjust enrichment, and gross mismanagement.  In support of these claims, Plaintiff alleges upon personal knowledge with respect to those allegations pertaining to himself, and upon information and belief based upon, *inter alia*, a review of public filings, press releases and reports, and investigations undertaken by his counsel, as to all other allegations, as follows.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of Willbros against the Individual Defendants – six members of its Board of Directors (the "Board") and two current and former Willbros officers – for wrongdoing that occurred from May 5, 2014 to the present (the "Relevant Period").

2.     A global engineering company headquartered in Houston, Texas and listed on the New York Stock Exchange ("NYSE"), Willbros operates in the field of energy infrastructure services and provides engineering, procurement and construction, and other specialty services.

3.     On May 5, 2014 and August 4, 2014, the Individual Defendants caused Willbros to issue false and misleading statements regarding Willbros's financial performance for the first and second quarters of fiscal 2014.  In financial statements approved by the Board's Audit Committee and signed by

1

Harl and Welch, Willbros reported contract revenues of $218.4 million and $237.8 million for its Oil & Gas segment for the first and second quarters of fiscal 2014. On October 21, 2014, however, Willbros shocked the market by announcing a $22 million to $24 million error in its previously-announced financial results and its intention to restate the second quarter 2014 results:

> *The Company has identified approximately $22.0 to $24.0 million in deterioration* of a significant pipeline construction project in the Company's Northeast regional business within the Oil & Gas segment. This deterioration consists of the reversal of *approximately $8.0 million in pre-tax income* previously recognized and the recognition of *approximately $14.0 to $16.0 million in estimated pre-tax losses* at project completion. Although some of the project deterioration related to the third quarter of 2014, the Company has determined that a majority of these estimated charges should have been recognized in the second quarter of 2014. As a result, *the Company expects to restate its second quarter of 2014 results and such results should no longer be relied upon …*[1]

4.      In addition, Willbros disclosed potential problems in its internal controls over financial reporting and disclosure procedures:

> In addition, management, with oversight from the Company's Audit Committee, is *evaluating any impact on its prior conclusions of the adequacy of internal control over financial reporting and disclosure controls and procedures*. The Company will amend, as necessary, any disclosures pertaining to its evaluation of such controls and procedures.

5.      The sudden disclosure of the Company's anticipated restatement and lack of internal controls caused its stock price to drop by approximately 35% in one day to $4.90 per share. In a single day, this price drop resulted in the loss of over $300 million in market capitalization. Alleging that Willbros's pre-disclosure financial statements were false and misleading and

---

[1] All emphases are added unless otherwise noted.

caused Willbros's stock price to trade in artificially inflated prices, several purchasers of Willbros's stock commenced securities-fraud class actions in this District, which were consolidated on January 30, 2015 into *In re Willbros Group, Inc. Securities Litigation*, Master File No. 14-cv-3084 KPE (S.D. Tex.) (the "Securities Class Action").

6.     In connection with the defense of the Securities Class Action, the investigation of accounting irregularities, and the restatement of financial results, Willbros has incurred and will continue to incur the loss of a substantial amount of money.  Willbros is further damaged by the loss of, among other things, market capitalization and goodwill.

7.     This lawsuit seeks, among other things, to hold the Individual Defendants accountable for these damages, and to obtain declaratory and injunctive relief to remedy the Individual Defendants' violations of law.

8.     Plaintiff did not make a demand on the Board to pursue the claims asserted in this complaint because such a demand would have been futile.  As demonstrated in detail below, Willbros's directors – defendants McNabb, DiPaolo, Lebens, Lonergan, Sluder, and Williams – cannot consider a demand in an independent, disinterested manner because of (a) their tangled business and personal relationships; and (b) the substantial likelihood of liability they face for their wrongdoing alleged in this complaint.

9.     All directors knew or should have known about the revenue recognition irregularities at issue here because the Oil & Gas segment is Willbros's core business.  As stated in Willbros's Form 10-K filed with the Securities and Exchange Commission ("SEC") on February 28, 2014, the Board was expected to focus on improving the financial performance of the Oil & Gas segment.  Plaintiff is thus excused from making a demand on the Board to pursue the claims asserted in this complaint.

3

## II.    JURISDICTION AND VENUE

10.    The Court has subject-matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 because (a) there is complete diversity between Plaintiff and all defendants; and (b) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.    This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

12.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1401 because Willbros maintains its principal executive offices in this District and because a substantial portion of the acts and conduct alleged in this complaint – including the dissemination of materially false and misleading information to the investing public – occurred in this District.

13.    Defendants have minimum contacts with this District, as they have entered into contracts in this District, or have frequently traveled here on Company business, or have authorized acts and actions that have had a sufficient impact in this District or on the Company's shareholders and investors residing here to justify the exercise of jurisdiction over them.

## III.    THE PARTIES

### A.    Plaintiff

14.    Plaintiff Ravi Kumararatne is a current shareholder of Willbros. Plaintiff has continuously held Willbros stock during all relevant times. Plaintiff is a citizen of Washington.

### B.    The Individual Defendants

#### (1)    The Director Defendants

15.    Defendant John T. McNabb, II is a member of the Board and has been a director of Willbros since August 2006.  McNabb is also a member of the Executive Committee and the Finance Committee of the Board.  McNabb

has been a member of these committees during the entire Relevant Period. McNabb served as non-executive Chairman of the Board from September 2007 until August 2014 when he was appointed Executive Chairman. He was appointed Chief Executive Officer ("CEO") in October 2014. Since June 2011, McNabb has been holding senior positions at Duff & Phelps Corporation, a global independent provider of financial advisory and investment banking services, including senior advisor (corporate finance) and vice chairman (corporate finance). Upon information and belief, McNabb is a citizen of North Carolina.

16.     Defendant Edward J. DiPaolo is a member of the Board and has been a director of Willbros since May 2009. DiPaolo is also a member of the Audit Committee and the Nominating/Governance Committee of the Board. DiPaolo has been a member of these committees during the entire Relevant Period. Like defendant McNabb, DiPaolo has been a senior advisor at Duff & Phelps Corporation since 2011. Upon information and belief, DiPaolo is a citizen of Texas.

17.     Defendant Michael C. Lebens is a member of the Board and has been a director of Willbros since May 2011. Lebens has been a member of the Compensation Committee and Nominating/Governance Committee of the Board during the entire Relevant Period. In 2012, Lebens retired from Tenaska Energy, Inc., an independent energy company, as president and chief executive officer. Lebens had been employed at Tenaska since 1987. Upon information and belief, Lebens is a citizen of Arizona.

18.     Defendant Daniel E. Lonergan is a member of the Board and has been a director of Willbros since July 2010. Lonergan has been a member of the Executive Committee, Audit Committee, and Finance Committee of the Board during the entire Relevant Period. Lonergan is the chief executive

officer and a founding member of an affiliate of Tenaska Energy, Inc., Tenaska Capital Management, which manages approximately $4 billion of assets invested in power and energy-focused private equity funds.   Upon information and belief, Lonergan is a citizen of Nebraska.

19.   Defendant Robert L. Sluder is a member of the Board and has been a director of Willbros since May 2007.   Sluder is the chair of the Compensation Committee of the Board and is a member of the Nominating/Governance Committee.   Sluder has held these committee positions during the entire Relevant Period.   Upon information and belief, Sluder is a citizen of Utah.

20.   Defendant S. Miller Williams is a member of the Board and has been a director of Willbros since May 2004.   Williams was appointed Lead Independent Director in August 2014.   Williams is the chair of the Audit Committee and a member of the Compensation Committee and Finance Committee.   Williams has held these committee positions during the entire Relevant Period.   Upon information and belief, Williams is a citizen of North Carolina.

21.   Defendants DiPaolo, Lonergan, and Williams are collectively referred to as the "Audit Committee Defendants."

22.   Defendants McNabb, DiPaolo, Lebens, Lonergan, Sluder, and Williams are collectively referred to as the "Director Defendants."

**(2)   The Officer Defendants**

23.   Defendant Robert "Randy" R. Harl was the CEO of Willbros until his resignation, which was initially scheduled for January 2, 2015, but became effective on October 21, 2014, according to Willbros's press release that day.   Harl also resigned from his position as a director on October 21,

2014.  Harl joined Willbros in 2006 and became its CEO in January 2007. Upon information and belief, Harl is a citizen of Texas.

24.     Defendant Van A. Welch is the Chief Financial Officer ("CFO") of Willbros and has held that position since August 2006.  Upon information and belief, Welch is a citizen of Texas.

## C.     The Nominal Defendant

25.     Nominal defendant Willbros Group, Inc. is a Delaware corporation headquartered in Houston, Texas.  Willbros conducts business as an infrastructure contractor serving oil, gas, refinery, petrochemical, and power industries worldwide.  Willbros's common stock is traded on the NYSE under the ticker symbol "WG."  Willbros is a citizen of Delaware and Texas.

26.     Willbros and the Individual Defendants are collectively referred to as "Defendants."

## IV.     FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

## A.     General Duties as Officers and Directors of Willbros

27.     By reasons of their positions as officers and directors of Willbros and because of their ability to control the business and corporate affairs of Willbros, the Individual Defendants owed to Willbros the fiduciary duties of loyalty, honesty, candor, good faith, and due care.  These duties required the Individual Defendants to use their utmost ability to control and manage Willbros in a fair, just, honest and equitable manner, and to act in the best interests of Willbros and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

28.     Each director and officer owed and owes to Willbros and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of Willbros and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

29.     Pursuant to their positions at the Company and their fiduciary obligations to Willbros, the Individual Defendants were required to promptly disclose truthful and accurate information with respect to the Company's business, operational, and compliance policies.   Similarly, the Individual Defendants were obligated to correct any previously-issued statements that had become materially misleading or untrue.

30.     To properly discharge their fiduciary duties, the Individual Defendants were also required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of Willbros.  Pursuant to their fiduciary duties, the Individual Defendants were required to, among other things:

(a)     ensure that proper internal controls existed at Willbros, including internal controls for accurate financial reporting, accounting, and management systems;

(b)     ensure that the filing of any audits, reports, or other public statements issued by Willbros included full and accurate disclosures of all material facts;

(c)     manage, direct, and supervise the employees, businesses, and affairs of Willbros in accordance with the laws of the United States, Delaware (its state of incorporation), and all other states in which Willbros conducts business;

(d)     manage, direct, and supervise the employees, businesses, and affairs of Willbros in accordance with the rules and regulations set by government agencies;

(e)     manage, direct, and supervise the employees, businesses, and affairs of Willbros in accordance with its charters and by-laws;

(f)      remain informed as to Willbros's operations and, upon receiving notice or information of potentially unsafe, imprudent, or unlawful practices, to make a reasonable investigation into those practices as well as to take all necessary corrective action;

(g)      supervise and assist in the preparation, creation, filing, and dissemination of all SEC filings, press releases, audits, financial statements, reports, and other information disseminated to the public by Willbros;

(h)      conduct Willbros's affairs in an efficient, businesslike matter so as to make it possible to provide the highest quality of performance of its business, to avoid wasting Willbros's assets, and to maximize the value of Willbros's stock;

(i)      exercise reasonable control and supervision over the officers and employees of the Company; and

(j)      preserve and enhance the reputation and goodwill of Willbros in the public eye to ensure trust and confidence in Willbros as a prudently-managed corporation.

## B.      The Code of Business Conduct and Ethics

31.      As directors and officers of Willbros, the Individual Defendants must comply with Willbros's Code of Business Conduct and Ethics (the "General Code").

32.      The Code expressly requires that the Individual Defendants ensure that Willbros's business records "fairly and completely reflect [its] operations and financial condition":

### Accurate and Honest Books and Records

As a publicly traded company, our shareholders and other business partners rely on us to provide

9

> *business records that fairly and completely reflect our Company's operations and financial condition. It is our responsibility to ensure that the information provided is honest, accurate, timely, complete, fair and understandable and complies with all applicable and accepted accounting principles, statutory requirements and the Company's internal control procedures.*

33.    The Code prohibits Willbros employees from providing "false or misleading financial information":

> Despite any internal or external pressures, you may never provide false or misleading financial information or waive your independent judgment at the request of another.   Doing so, or requesting another to do so, will result in disciplinary actions up to and including termination of employment of those involved.   You must know and follow the Company's internal controls over financial reporting. *You may never make false or misleading entries or establish unrecorded or off balance sheet accounts*.   Even if you do not directly record transactions or events, be sure any and all information you file, including on time cards, quality reports and expense reports, is accurate and complete.

34.    Moreover, the Code specifically requires that "the Company's financial disclosures are full, fair, accurate, timely and understandable":

> **Financial Disclosures**
>
> …   Those with finance and accounting responsibilities have a special duty to exercise independent judgment.   If you have such responsibilities, you must know and adhere to legal and regulatory requirements that govern these public disclosures.   The CEO and CFO, in particular, must certify our financial statements on a regular basis to ensure their accuracy. Remember, inaccurate, incomplete or untimely disclosures may not only damage the Company, but also may result in disciplinary action including termination of employment and legal liability for those involved.

### C.     The Code of Ethics for CEO and Senior Financial Officers

35.     In addition to the General Code, Harl and Welch are also subject to Willbros's Code of Ethics for CEO and Senior Financial Officers (the "Senior Officer Code"), which imposes specific duties upon them to ensure "full, fair, accurate, timely and understandable disclosure in the periodic reports required to be filed by the Company with the Securities and Exchange Commission."

36.     Specifically, the Senior Officer Code requires that Harl and Welch "promptly bring to the attention of … the Audit Committee any information [they] may have concerning (a) significant deficiencies in the design or operation of internal controls which could adversely affect the Company's ability to record, process, summarize and report financial data or (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's financial reporting, disclosures or internal controls."

37.     Moreover, Harl and Welch are required to "promptly bring to the attention of the General Counsel or the CEO and to the Audit Committee any information he or she may have concerning evidence of a material violation of the securities or other laws, rules or regulations applicable to the Company and the operation of its business, by the Company or any agent thereof, or of any violation of the [General] Code] or of these additional procedures."

### D.     The Audit Committee Charter

38.     Under its charter, the Audit Committee is charged with the responsibilities of (a) ensuring "the integrity of the financial statements and the system of internal controls of the Company"; and (b) maintaining "oversight of the work of the independent auditor (including resolution of disagreements between management and the independent auditor regarding

11

financial reporting) for the purpose of preparing or issuing an audit report or performing related work."

39.    The Audit Committee Charter lists dozens of specific tasks that are required of the Audit Committee, including:

\*        \*        \*

b.    *Meet to review and discuss with management and the independent auditor the Company's quarterly financial statements*, including reviewing the Company's specific disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to the filing of its Form 10-Q, including the results of the independent auditor's review of the quarterly financial statements.

c.    *Discuss with management and the independent auditor significant financial reporting issues* and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles.

d.    *Review and discuss with management and the independent auditor any major issues as to the effectiveness of the Company's internal controls*, any special steps adopted in light of material control deficiencies and the adequacy of disclosures about changes in internal control over financial reporting.

\*        \*        \*

f.    Review and discuss quarterly reports from the independent auditors on (i) all critical accounting policies and practices to be used; (ii) all alternative treatments of financial information within generally accepted accounting principles that have been discussed with management, ramifications of the use of such alternative disclosures and treatments, and the treatment preferred by the independent auditor; and (iii) other material written communications between the independent auditor and management, such as any management letter or schedule of unadjusted differences.

\*        \*        \*

12

   k. Review disclosures made to the Audit Committee by the Company's Chief Executive Officer and Chief Financial Officer during their certification process for the Form 10-K and Form 10-Q's *about any significant deficiencies in the design or operation of internal control over financial reporting or material weaknesses therein* and any fraud involving management or other employees who have a significant role in the Company's internal control over financial reporting.

**E. The Duty of Reasonable and Prudent Supervision**

  40. The Individual Defendants are required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the Individual Defendants are required to, among other things:

   (a) refrain from acting upon material inside corporate information to benefit themselves;

   (b) ensure that the Company complies with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

   (c) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

   (d) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

   (e) remain informed as to how Willbros conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in

connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(f) ensure that Willbros was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## V. CONSPIRACY AND CONCERTED ACTION

41. In committing the wrongful acts alleged in this complaint, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.   The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

42. During the Relevant Period, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did conceal the fact that:  (a) the Company's revenue and financial results were overstated; (b) the Company lacked adequate internal and financial controls; and (c) as a result of the foregoing, the Company's financial statements were materially false or misleading.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions alleged in this complaint.

43. The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.   During this time, the Individual Defendants caused the Company to issue false or misleading financial results based upon non-existent revenue or based on revenue that was improperly recorded in an earlier time period than when it was earned.

14

44.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to:  (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duties, and unjust enrichment; and (b) disguise and misrepresent the Company's future business prospects.

45.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to falsely represent that the Company had adequate internal controls in place, and by purposefully, recklessly, or negligently causing the Company to release improper statements.  Because the actions described in this complaint occurred under the authority of the Board, each Individual Defendant was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of their misconduct.

46.     Each Individual Defendant aided and abetted and rendered substantial assistance in the misconduct alleged in this complaint.  In taking such actions to substantially assist the commissions of such misconduct, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## VI.    BREACHES OF FIDUCIARY DUTIES

47.     Each Individual Defendant owed to Willbros and to its shareholders the fiduciary duties of loyalty and good faith, and the exercise of due care and diligence in managing and overseeing the Company's affairs, as well as in the use and preservation of its property and assets.  The Individual Defendants' misconduct involves knowing and culpable violations of their obligations as directors and officers of Willbros, the absence of good faith on their part, or a reckless disregard of their duties that they were aware or

should have been aware posed a risk of serious injury to Willbros. Each Individual Defendant ratified each other's misconduct because they collectively comprised the Board and management during the Relevant Period.

48.     The Individual Defendants each breached their duties of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements regarding, among other things:

(a)     Willbros's revenues and financial results with respect to its Oil & Gas segment for the first and second quarters of 2014; and

(b)     the adequacy of Willbros's internal controls over financial reporting.

## VII.   SUBSTANTIVE ALLEGATIONS

**A.     The Oil & Gas Segment Constitutes Willbros's Core Business**

49.     Willbros operates four key segments: Oil & Gas, Utility T&D, Professional Services, and Canada. Willbros's Oil & Gas segment provides construction, project management, maintenance and lifecycle extension services to the upstream, midstream and downstream markets. Not only does the Oil & Gas segment have a long history in Willbros's operations, the segment also employs more employees and generates higher revenues than the other three segments.

50.     According to Willbros's Form 10-K for fiscal 2013, filed with the SEC on February 28, 2014, the Oil & Gas segment manages 3,996 employees – approximately 42.5% of Willbros's entire work force.

51.     In 2013, the Oil & Gas segment generated approximately $791,076,000 in contract revenue, representing over 39% of Willbros's entire contract revenue from all segments.

16

52.   Also in 2013, the Oil & Gas segment reported approximately $40,193,000 in operating loss.   The Individual Defendants blamed the substantial operating loss on "ineffective project management and execution." As a result, the Individual Defendants caused Willbros to "change[] leadership within the Oil & Gas segment" by purportedly "add[ing] management talent to provide more oversight and training."

53.   All told, the Individual Defendants knew or should have known that the Oil & Gas segment is Willbros's core business.   And because of the substantial operating loss in 2013, the Individual Defendants were expected to pay close attention to the operation and revenue of the Oil & Gas segment in 2014.   In fact, as stated in the February 28, 2014 Form 10-K, Willbros expected to improve the performance of the Oil & Gas segment:

> **Looking Forward**
>
> … The rapid growth we experienced in our regional delivery services within our Oil & Gas segment outpaced our management capacity resulting in significant deterioration to our overall financial results.   The regional market demands local presence, more front line management and back office support.   *At the beginning of the year, we changed leadership within the Oil & Gas segment and added management talent to provide more oversight and training.*   Additionally, we improved the back office systems and tools required for these transaction-intensive locations.   We have established clear performance standards and an assurance process to verify that these standards are being met.   *These actions are proving successful with quarter-over-quarter improvement, and we believe these issues have been adequately addressed.*
>
> We believe our opportunities in the markets we serve are strong.   We have much better visibility going into 2014 than we have had in two years. *In the Oil & Gas segment, our large-diameter pipeline spread capacity is largely booked into early fall of this year*.   Within our regional delivery services, we are focusing our resources on growing midstream pipeline and facilities and pipeline

17

integrity opportunities where we can differentiate our services …

54.     Each Director Defendant – McNabb, DiPaolo, Lebens, Lonergan, Sluder, and Williams – signed the February 28, 2014 Form 10-K.  So did Harl and Welch.

55.     As discussed below, however, the Individual Defendants failed to secure the improvement of financial performance in Willbros's Oil & Gas segment.  Instead, the Individual Defendants caused Willbros to overstate its revenues in the Oil & Gas segment in fiscal 2014.

**B.     The Individual Defendants Caused Willbros to Disseminate False and Misleading Information Regarding Its Financial Performance in the Oil & Gas Segment**

56.     In a May 5, 2014 press release entitled "Willbros Reports First Quarter 2014 Results from Continuing Operations," the Individual Defendants caused the Company to state:

> Willbros Group, Inc. (NYSE: WG) announced today results from continuing operations for the first quarter of 2014.  The Company reported net income from continuing operations of $10 thousand, or $0.00 per diluted share, on revenue of $517.7 million, compared to a net loss from continuing operations in the first quarter of 2013 of $11.6 million, or $0.24 per share, on revenue of $487.4 million. The Company reported operating income from continuing operations of $11.0 million, a $12.6 million improvement in operating income, compared to an operating loss of $1.6 million in the first quarter of 2013.
>
> Randy Harl, President and Chief Executive Officer, commented, "We continue to benefit from our diversified business model as we delivered another quarter of year-over-year improvement led by strong performance in Canada.  Operating margins in the Professional Services segment also improved in a historically weak quarter due to growing demand for our engineering and integrity related field services.   Even though our first quarter results for the Oil & Gas and Utility T&D segments were   impacted   by   adverse   weather,   the

18

diversification in our model is working and delivering improved results.

"The $11.0 million improvement in the Oil & Gas segment's operating results was due to solid execution in cross-country pipeline construction as well as a $12.5 million improvement in our regional delivery service line. In our regional delivery services, positive operating performance in the Northeast was offset by weather related costs incurred in the Northern Plains and Southern regions and under-absorption of indirect costs associated with lower than planned revenue levels. We continue to implement our new strategy to align our resources with our customers' needs as well as focus on projects where we have a competitive advantage. We have streamlined our offering in the downstream sector with the sale of the union refinery maintenance turnaround service line and related fabrication facility.  Going forward, we will focus our remaining downstream resources on tank, terminal, heater, fabrication and related field services where the market and our capabilities provide us with significantly better growth opportunities."

## **Segment Operating Results**
## **Oil & Gas**

For the first quarter of 2014, the Oil & Gas segment reported contract revenue of $218.4 million, an increase of $33.4 million compared to the first quarter of 2013.  The operating loss of $3.6 million was an improvement of $11.0 million from the first quarter of 2013.  Positive performance in cross-country pipeline construction, which benefited from higher utilization of resources, was more than offset by losses associated with regional delivery and downstream services. Additionally, timing on the resolution of change orders in the Company's facilities service line also negatively impacted operating income.  The Company continues to expect strong performance going forward from its cross-country pipeline construction services and for the regional service lines to be breakeven or better for the full year 2014. Additionally, the Company anticipates stronger performance from its remaining downstream services which have significant growth opportunities.

\*       \*       \*

19

## Backlog

At March 31, 2014, Willbros backlog from continuing operations was slightly down at $1.9 billion compared to $2.0 billion at December 31, 2013, primarily due to the continued work-off of long-term master service agreements, which are subject to renewal options in future years. At March 31, 2014, twelve month backlog was at $1.1 billion, essentially the same as at December 31, 2013.

57.   On May 6, 2014, the Individual Defendants caused Willbros to file its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal first quarter.   The Audit Committee Defendants reviewed and approved the financial statements contained in this Form 10-Q.   The Form 10-Q was signed by Welch, and reaffirmed the Company's financial results previously announced on May 5, 2014.   The Form 10-Q also contained the certifications under the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), signed by both Harl and Welch, who certified:

1.   I have reviewed this quarterly report on Form 10-Q of Willbros Group, Inc. for the quarter ended March 31, 2014;

2.   Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.   Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.   The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined

in Exchange Act Rules 13a- 15(f) and 15d-15(f)) for the registrant and have:

a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)    Any fraud, whether or not material, that involves management or other employees who have

a significant role in the registrant's internal control over financial reporting.

58.     On August 4, 2014, the Individual Defendants caused Willbros to announce its second quarter ended June 30, 2014 financial results.  In the announcement, Willbros reported for the second quarter net income from continuing operations of $7.0 million and operating income of $18.5 million.  The Company's Oil & Gas Segment reported the following:

### Oil & Gas

For the second quarter of 2014, the Oil & Gas segment reported contract revenue of $237.8 million, an increase of $103.4 million compared to the second quarter of 2013.  The operating loss of $7.8 million was an improvement of $14.0 million from the second quarter of 2013.  This improvement was primarily driven by the return to profitability in the regional service lines, reflecting the Company's focus on larger midstream where it can be successful. However, cost increases on one project in Oil & Gas led to a loss for the segment.

59.     On August 5, 2014, the Individual Defendants caused Willbros to file its Form 10-Q for the Second Quarter with the SEC.  The Audit Committee Defendants reviewed and approved the financial statements contained in this Form 10-Q.  The Form 10-Q was signed by Welch.  Accompanying the Form 10-Q were Sarbanes-Oxley certifications of Welch and Harl attesting to the accuracy of the 10-Q.  The certification included the following statement regarding Willbros's internal controls:

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect

22

the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

60.     The Form 10-Q reaffirmed the statements made in the Company's press release of August 4, 2014.

61.     The above statements were materially false and misleading because the  Company was improperly accounting for a significant pipeline construction project, and as a result the Company's second quarter financial statements were misstated – requiring a reversal of $8 million in recognized pre-tax income and the recognition of approximately $14-$16 million in estimated pre-tax losses at completion.

**C.      The Individual Defendants Caused Willbros to Disclose Errors in Its Financial Reporting and the Necessity to Restate Its Financial Results**

62.     On October 21, 2014, after the market closed, the Individual Defendants shocked the market by causing Willbros to issue a press release announcing the restatement of the Company's second quarter financial results.  The announcement stated in relevant part:

Willbros Group Refocuses Business Strategy with New Management Leadership

Published: Oct 21, 2014 9:24 p.m. ET

HOUSTON, Oct. 21, 2014 /PRNewswire/ – Willbros Group, Inc. WG, +2.04% announced today that it is refocusing its business strategy under the leadership of John T. McNabb, II, newly elected Chief Executive Officer, and a restructured management team.

The Company has identified approximately $22.0 to $24.0 million in deterioration of a significant pipeline construction project in the Company's

Northeast regional business within the Oil & Gas segment. *This deterioration consists of the reversal of approximately $8.0 million in pre-tax income previously recognized and the recognition of approximately $14.0 to $16.0 million in estimated pre-tax losses at project completion.* Although some of the project deterioration related to the third quarter of 2014, the Company has determined that a majority of these estimated charges should have been recognized in the second quarter of 2014. As a result, *the Company expects to restate its second quarter of 2014 results and such results should no longer be relied upon.* Additional information relating to the restatement is being disclosed in a Form 8-K being filed with the SEC. The Company now expects to report operating income of approximately $26.0 to $28.0 million for the nine months ended September 30, 2014, subject to the completion of its quarterly close procedures.

In addition, management, with oversight from the Company's Audit Committee, *is evaluating any impact on its prior conclusions of the adequacy of internal control over financial reporting and disclosure controls and procedures.* The Company will amend, as necessary, any disclosures pertaining to its evaluation of such controls and procedures.

The Company's Audit Committee is also overseeing an additional evaluation of this deterioration to determine its root cause and any impact on prior conclusions.

Mr. McNabb, CEO, commented, "The disappointing performance in the Oil & Gas segment is unacceptable. The senior management team, with active support from the Board, is taking immediate and decisive action. In addition to simplifying the structure of the Oil & Gas segment, we are bringing in new operations management and executive oversight with industry experience specific to the projects we currently have booked and the opportunities we are targeting. Our objective is to establish a stronger correlation between our work commitments and our execution resources in order to generate operating margins at or above our peer group.

"Management is currently evaluating the operating structure of the Oil & Gas segment with the objectives of reducing the number of business units and optimizing the utilization of our project teams and equipment resources. We intend to exit the

24

construction field service business in the regional shale oil/gas markets and continue to meet customer expectations for delivery of pipeline and facilities projects with a simplified and more profitable operating structure.

"This bolstering of operations and executive staff has already allowed Oil & Gas segment senior management to focus additional attention on improving the pipeline and related facilities construction business.

"These changes should enable us to return margins to acceptable levels on a consolidated basis. Along with this new approach, we intend to generate between $100.0 million and $125.0 million, primarily for debt reduction, from the sale of assets and to reduce general and administrative costs across the Company by at least $30.0 million on an annual basis.

We expect this leaner and more profitable entity to generate $1.6 billion to $1.7 billion in annual revenue. Our markets are robust and we need to take advantage of this environment to generate greater returns for our shareholders. Our Board of Directors has endorsed the restructuring in order to support focused and sustainable growth for the Company."

Mr. McNabb continued, "In his expanded role as President and COO, Mike Fournier is directing the Oil & Gas segment leadership to accomplish these changes. Oversight of all Willbros construction operations will continue to be the responsibility of Mike. His demonstrated performance in the successful turn-around of the Willbros Canada operation gives us confidence we can meet the goals we've outlined."

Mr. McNabb added, "To further reinforce our intention to improve our pipeline construction performance, John Allcorn has been promoted to Executive Vice President of Willbros Group and Product Line Executive - Pipeline Services. John, a pipeline construction executive with 30 years of experience in the cross-country pipeline sector, is working directly with pipeline business units in both the Oil & Gas and Canada segments to bolster their capabilities and take advantage of strong markets. With John's guidance, expertise and contacts in the industry, we expect to reinforce existing project teams and repeat the many

successes Willbros has achieved, most recently the NET Mexico project in South Texas."

Concurrent with the changes in management responsibilities, Johnny Priest has been promoted to Executive Vice President of Willbros Group and Product Line Executive - Utility Transmission & Distribution. Ed Wiegele, Executive Vice President of Willbros Group and President of Willbros Engineering & Technology has taken on executive responsibility for integrated EPC and pipeline integrity services, in addition to his responsibilities for project services and engineering business units. In addition to Messrs. Fournier and Allcorn, Messrs. Priest, Wiegele and the balance of the Executive Leadership Team will report to John McNabb.

Mr. McNabb continued, "We are positioned favorably, with a great brand, great customers and strong markets. The Oil & Gas segment will focus on the Willbros service offerings of pipeline and facilities construction, both large diameter and mid-size. We intend to correct the shortcomings in our Oil & Gas segment to bring it up to the level of our Canada segment operations, which are performing well and will not be impacted by these changes. The Utility T&D segment will continue to execute its previously announced transition strategy, expanding its markets and customer base. The Professional Services segment will continue to concentrate on its core services, technological advantages and successful offices."

63.     This announcement caused the Company's stock to drop from $7.65 per share on October 21, 2014 to $4.90 per share on October 22, 2014 – or by approximately 35%. This price drop resulted in the loss of over $300 million in market capitalization.

## VIII.  DAMAGES TO WILLBROS

64.     Willbros has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

65.     As a direct and proximate result of the Individual Defendants' conduct, Willbros has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     legal fees associated with the lawsuits filed against Willbros and its officers for violations of the federal securities laws;

(b)     loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Individual Defendants' false statements and lack of candor to the marketplace;

(c)     amounts paid to outside lawyers, accountants, and investigators in connection with any investigation; and

(d)     loss of revenues and profits.

## IX.     DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

66.     Plaintiff brings this action derivatively on behalf and for the benefit of Willbros to redress injuries suffered by Willbros as a direct result of the violations of the federal securities laws, breaches of fiduciary duties, as well as the aiding and abetting thereof, unjust enrichment, and gross mismanagement by the Individual Defendants.

67.     Plaintiff will adequately and fairly represent the interests of Willbros and has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

68.     Plaintiff has continuously held stock in Willbros during the Relevant Period and remains a shareholder of Willbros.

69.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth below.  Plaintiff did not make a demand on the Board to bring this action because such demand would be futile given the facts as alleged in this complaint and, therefore, such a demand is excused.

70.     Willbros is controlled by its Board, which, at the time of the commencement of this action, consisted of the six Director Defendants –

McNabb, DiPaolo, Lebens, Lonergan, Sluder, and Williams.  When a board is comprised of an even number of directors, such as in this case, a plaintiff need only demonstrate that half of the directors are interested or lack objectivity.  As set forth below, Plaintiff alleges that at least three of the Director Defendants are not disinterested and, as a result, cannot exercise independent business judgment on the issue of whether Willbros should prosecute this action.  Accordingly, a demand on Willbros and its Board is futile and, therefore, is excused.

71.    All Director Defendants – McNabb, DiPaolo, Lebens, Lonergan, Sluder, and Williams – face a substantial likelihood of liability and, therefore, are interested.

72.    Moreover, demand is excused because this complaint alleges with particularity that at least three of the Director Defendants intentionally or recklessly either (a) breached their duty of loyalty by directly participating in the wrongs alleged in this complaint, in order to benefit themselves at the expense of the Company, or (b) breached their duty of candor by consciously and/or recklessly ignoring that the Company's public statements were false and misleading.  Specifically, the public statements made by Willbros during the Relevant Period were false and misleading because they failed to disclose, among other things:

(a)    the deterioration of approximately $8 million in pre-tax income previously recognized;

(b)    the improper recognition of approximately $14 to $16 million in estimated pre-tax losses; and

(c)    the inadequacy of the Company's internal controls over financial reporting.

28

**A.     All Directors Face a Substantial Likelihood of Liability**

73.     Under the core-product doctrine, all Director Defendants are charged with the knowledge of the financial performance of Willbros's Oil & Gas segment.

74.     The Oil & Gas segment is Willbros's core business during the Relevant Period because, as of 2013, it employed 42.5% of Willbros's work force and generated 39% of Willbros's contract revenue.

75.     Moreover, because the Oil & Gas segment suffered an operating loss in excess of $40 million in 2013, it is the focus of the Board and management in 2014.

76.     Indeed, in the February 28, 2014 Form 10-K, which was signed by all Director Defendants, the Director Defendants stated that they had identified the cause of the operating loss in the Oil & Gas segment, implemented changes, and expected improvement in 2014:

> At the beginning of [2014], *we changed leadership within the Oil & Gas segment and added management talent to provide more oversight and training*. Additionally, we improved the back office systems and tools required for these transaction-intensive locations.   We have established clear performance standards and an assurance process to verify that these standards are being met.   *These actions are proving successful with quarter-over-quarter improvement, and we believe these issues have been adequately addressed*.

77.     As such, the Director Defendants were charged with knowledge of the revenue recognition issues in the Oil & Gas segment for 2014.  Despite such knowledge, the Director Defendants reviewed and approved the false and misleading financial statements disseminated by Willbros during the Relevant Period.  Under the Director Defendants' watch, Willbros improperly recognized revenues for 2014 in the Oil & Gas segment by at least $22 million.

78.     As a result, Willbros is required to restate its financial results for at least the second quarter of 2014.   The Director Defendants face a substantial likelihood of liability for the restatement.   Demand is thus futile and excused.

**B.     The Director Defendants Lack Independence Because They Failed to Terminate the Employment of Harl and Gibson**

79.     The Director Defendants' lack of independence is demonstrated by the fact that they allowed Harl to retire without any disciplinary action, even though he was responsible for causing Willbros to overstate its revenue in the Oil & Gas segment for 2014.

80.     According to a press release dated September 4, 2014, Harl was scheduled to retire from his position as CEO on January 2, 2015, when his employment agreement was to expire.   And after Harl's retirement, McNabb would assume the position as Willbros's CEO.

81.     In the wake of Willbros's shocking disclosure of accounting irregularities, however, the Director Defendants caused Willbros to announce on October 21, 2014 that Harl had "relinquished" his positions as CEO and director effective "immediately."

82.     Instead of terminating Harl for his misconduct that caused Willbros to misstate its financial results, the Director Defendants allowed him to expedite his retirement without any consequences.   This demonstrates the Director Defendants' unwillingness to hold Harl accountable for his misconduct and to seek damages against him on Willbros's behalf.   Demand is thus futile and excused.

83.     Moreover, the Director Defendants failed to pursue any claims against or terminate the employment of James L. Gibson, Willbros's Executive Vice President of Project Management, who shared responsibility

for its losses and revenue reversals.  In fact, Willbros has admitted that the accounting irregularities at issue in this action were caused in part by poor project management and planning – the very areas for which Gibson was responsible.  Instead of firing Gibson for cause, the Director Defendants allowed Gibson to "retire" early, effective as of March 31, 2015.

84.     Not only did the Director Defendants fail to pursue any claims against Gibson, they bought his silence so that he could not implicate the Individual Defendants in the false accounting.  In exchange for releasing Willbros and the Individual Defendants, the Director Defendants caused Willbros to agree to allow 49,263 unvested restricted shares and 15,084 unvested performance-based stock units held by Gibson to immediately vest as of his retirement date on March 31, 2015.  The Director Defendants also agreed to pay Gibson $200 per hour for consulting work going forward, with guaranteed annual payments of at least $200,000.  This demonstrates the Director Defendants' unwillingness to hold Gibson accountable for his failure to perform his job duties and their willingness to buy his silence.  Demand is thus futile and excused.

## C.     McNabb Is Interested and Lacks Independence

85.     McNabb assumed the position of CEO at Willbros in October 2014, in the wake of Harl's abrupt departure, and has held that position since then.  Due to the fact that he is an officer of Willbros, McNabb is not independent.

86.     Willbros admits that McNabb lacks independence because he currently serves as CEO of the Company, and thus does not meet the standard for independence of the NYSE, on which the Company's stock trades.

87.   In addition, McNabb has received and continues to receive substantial income from Willbros.   In 2013 alone, McNabb received approximately $309,748 from Willbros, solely for sitting on the Board as a director.   This outsized director compensation, together with his current compensation as CEO, prevents McNabb from considering a litigation demand in a disinterested and independent manner.

88.   In addition, as discussed above, McNabb faces a substantial likelihood of liability for approving the disclosure of false and misleading financial statements regarding the Oil & Gas segment, despite his knowledge of the falsity of the statements.   Thus, demand on McNabb is futile and excused.

### D.   McNabb, DiPaolo, Lebens, and Lonergan Are Interested and Lack Independence Due to Their Intertwining Relationships

89.   McNabb's and DiPaolo's careers overlapped for over a decade.

90.   McNabb has been a Willbros's director for over eight years. McNabb also serves as Senior Advisor and was formerly Vice Chairman, Corporate Finance of Duff & Phelps Securities LLC, a leading global financial advisory firm he joined in June 2011.   Between 1992 and 2011, McNabb was founder and Chairman of the Board of Directors of Growth Capital Partners, L.P., an investment and merchant banking firm.

91.   Between 2003 and 2011, DiPaolo was a partner at Growth Capital Partners, L.P., the investment firm founded by McNabb.   Like McNabb, DiPaolo joined Duff & Phelps Securities LLC as a Senior Advisor in 2011.

92.   Lebens's and Lonergan's careers overlapped for nearly two decades.

93.    Lebens is a member of the Board of Stakeholders of Tenaska Energy, Inc., an independent energy company, and retired as President and Chief Executive Officer of Tenaska's Engineering and Operations Group on August 1, 2012.  Lebens joined Tenaska in 1987.  Between 1990 and 2012, Lebens directed project management and operations for all of Tenaska's power generating projects.

94.    Lonergan joined Tenaska in 1997 as a Vice President in Tenaska's finance division.  Lonergan most recently served as a Senior Managing Director of Tenaska Capital Management.  Like Lebens, Lonergan is a member of the Board of Stakeholders of Tenaska Energy, Inc.

95.    The longstanding professional and personal relationships between McNabb, DiPaolo, Lebens, and Lonergan make them incapable of considering a litigation demand in a disinterested and independent manner.

**E.     The Audit Committee Defendants – DiPaolo, Lonergan, and Williams – Are Interested and Lack Independence**

96.    The Audit Committee Defendants – DiPaolo, Lonergan, and Williams – were responsible for reviewing and approving quarterly and annual financial statements, as well as earnings press releases.

97.    For example, the Audit Committee Defendants were required to:

●    Meet to review and discuss with management and the independent auditor the Company's quarterly financial statements, including reviewing the Company's specific disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to the filing of its Form 10-Q, including the results of the independent auditor's review of the quarterly financial statements.

- Discuss with management and the independent auditor significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles.

98. In a complete abdication of their fiduciary duties, however, the Audit Committee Defendants either failed to conduct the requisite reviews or conducted cursory, defective reviews. As a result, the Audit Committee Defendants approved the issuance of the false and misleading financial statements in the Company's Forms 10-Q as well as the Company's press releases, as set forth above.

99. The Audit Committee Defendants were also required to "[r]eview and discuss with management and the independent auditor any major issues as to the effectiveness of the Company's internal controls, any special steps adopted in light of material control deficiencies and the adequacy of disclosures about changes in internal control over financial reporting."

100. In a complete abdication of these responsibilities, however, the Audit Committee Defendants failed to implement adequate internal controls over the Company's financial reporting. This failure is particularly glaring in light of the fact that the false and misleading disclosures set forth above concerned the Oil & Gas segment – Willbros's core product that (a) employed 42.5% of its work force and generated 39% of its contract revenue in 2013; and (b) was at the center focus for improvement in 2014 due to its $40-plus million operating loss in the previous year.

101. The Audit Committee Defendants face a substantial likelihood of liability because they knowingly or recklessly disregarded red flags

34

demonstrating that Willbros's internal controls suffered from material weaknesses. Despite such knowledge, the Audit Committee Defendants reviewed and approved Willbros's financial statements and SEC filings during the Relevant Period, which falsely stated the opposite.

102. First, the Audit Committee Defendants had *actual knowledge* that Willbros had historically been plagued by materially deficient internal controls, especially those concerning financial reporting. For example, in 2005 Willbros was forced to restate its financial results for almost three years (2002, 2003, and the first nine months of 2004) due to overstating its net income during such periods by 53-80%. The Company was also forced to belatedly disclose a number of related-party transactions that adversely impacted its financial results.

103. Second, with respect to the accounting irregularities during the Relevant Period, the Company has admitted that (a) its restatement was caused in part by poor project management; and (b) project management roles were increasingly performed by foremen and engineers with little to no formal project management training. Upon information and belief, the Audit Committee Defendants were advised of this red flag during the Relevant Period, but failed to take any action.

104. The Audit Committee Defendants thus face a substantial likelihood of liability for breaches of their fiduciary duties of loyalty and good faith. Any demand upon the Audit Committee Defendants is futile.

105. As members of the Audit Committee, DiPaolo, Lonergan, and Williams were also responsible for (a) the integrity of the Company's financial statements; (b) the Company's systems of internal controls regarding finance and accounting as established by management; (c) the qualifications and independence of the independent registered public accounting firm; (d) the

performance of the Company's independent registered public accounting firm; and (e) the Company's auditing, accounting, and financial reporting processes generally.    Defendants DiPaolo, Lonergan, and Williams reviewed and approved the Company's false and misleading statements that misrepresented its business and financial prospects.   Defendants DiPaolo, Lonergan, and Williams, as members of the Board, each knew, or consciously disregarded, that the public statements were materially false and misleading.

106.   The Audit Committee Defendants, however, failed to correct the materially false and misleading information.  As such, the Audit Committee Defendants face a substantial likelihood of liability.  Thus, demand is futile as to DiPaolo, Lonergan, and Williams.

**F.    The Board Members Lack Independence for Additional Reasons**

107.   In addition, if the Company's current officers and directors are protected against personal liability for their acts of mismanagement, abuse of control, and breaches of fiduciary duties alleged in this complaint by directors and officers liability insurance ("D&O Insurance"), they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders.  Upon information and belief, however, the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by Willbros against the Individual Defendants, known as the "insured versus insured exclusion."   As a result, if the Director Defendants were to sue themselves or certain of the officers of Willbros, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis

for the Company to effectuate recovery.   Therefore, the Board cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

108.   Under the factual circumstances described in this complaint, the Individual Defendants are more interested in protecting themselves than they are in protecting Willbros by prosecuting this action.   Therefore, demand on Willbros and its Board is futile and excused.

109.   Willbros has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing.   But the Board has not filed any lawsuits against any directors or officers who were responsible for the losses.   Thus, the Director Defendants are breaching their fiduciary duties to the Company and face a substantial likelihood of liability for their breaches, rendering any demand upon them futile.

## X.    CAUSES OF ACTION
### Count I
### Breaches of Fiduciary Duties
### Against All Individual Defendants

110.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth below.

111.   Each of the Individual Defendants owed to Willbros the duty to exercise candor, good faith, and loyalty in the management and administration of the Company's business and affairs, particularly with respect to issues regarding its financial viability.

112.   Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

113.   The Individual Defendants' conduct set forth in this complaint was characterized by intentional, reckless, or negligent breaches of the

37

fiduciary duties the Defendants owed to Willbros, as alleged in this complaint.   The Individual Defendants intentionally, recklessly, or negligently breached or disregarded their fiduciary duties to protect the rights and interests of Willbros.

114.   In breach of their fiduciary duties owed to Willbros, the Individual Defendants willfully participated in misrepresentation of the Company's financial condition, failed to correct Willbros's public statements, and failed to properly oversee Willbros's business, rendering them personally liable to Willbros for breaching their fiduciary duties.

115.   The Individual Defendants had actual or constructive knowledge that they had caused Willbros to improperly misrepresent its financial condition, and the Defendants failed to correct Willbros's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth above, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the common stock of Willbros.

116.   These actions were not a good-faith exercise of prudent business judgment to protect and promote the corporate interests of Willbros.

117.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Willbros has sustained and continues to sustain significant damages.   As a result of the misconduct alleged above, the Individual Defendants are liable to Willbros.

**Count II**
**Unjust Enrichment**
**Against All Individual Defendants**

118.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth below.

119.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Willbros.

120.   During the Relevant Period, the Individual Defendants either received bonuses, stock options, or similar compensation from Willbros that was tied to the financial performance of Willbros, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

121.   Plaintiff, as a shareholder and representative of Willbros, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breaches of their fiduciary duties.

**Count III**
**Gross Mismanagement**
**Against All Individual Defendants**

122.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth below.

123.   The Individual Defendants each owed a duty to Willbros and its shareholders to, in good faith, supervise, manage, and control its operations.

124.   The Individual Defendants, by their actions or inactions, either directly or through aiding and abetting, abdicated their responsibilities and duties with regard to operating the business and affairs of Willbros.

125.   By subjecting Willbros to the unreasonable risk of substantial losses for violations of the federal securities laws, the Individual Defendants breached their duties owed to Willbros and its shareholders.

39

126.   As a direct and proximate result of the Individual Defendants' faithless acts, Willbros has sustained and continues to sustain significant damages and injuries.   As a result of the misconduct alleged in this complaint, Individual Defendants are liable to Willbros.

## XI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in favor of Willbros and against all Individual Defendants as follows:

A.   Declaring that Plaintiff may maintain this action on behalf of Willbros and that Plaintiff is an adequate representative of Willbros;

B.   Declaring that each of the Individual Defendants breached their fiduciary duties to Willbros;

C.   Determining and awarding to Willbros damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with interest;

D.   Determining and awarding to Willbros restitution from each of the Individual Defendants, and ordering disgorgement of all profits, benefits, and other compensation obtained by them;

E.   Directing Willbros and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Willbros and its shareholders from a repeat of the damaging events alleged above, including, but not limited to, enhancements to and improvements for the Company's corporate governance policies;

///

///

///

///

40

F.     Awarding to Willbros exemplary damages in an amount necessary to punish the Individual Defendants and to make an example of the Individual Defendants to the community according to the proof at trial;

F.     Ordering all appropriate equitable and/or injunctive relief against the Individual Defendants to the extent that the Company is unable to obtain from such Individual Defendants an adequate remedy at law;

H.     Awarding to Plaintiff the costs and disbursements of the action, including attorneys' fees, expert fees, costs, and expenses; and

I.     Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated:  March 4, 2015

Respectfully submitted,

SPONSEL MILLER GREENBERG PLLC
Roger B. Greenberg
Texas State Bar No. 08390000
Federal I.D. No. 3932
Thane T. Sponsel III
Texas State Bar No. 24056361
Federal I.D. No. 690068

/s/ Thane T. Sponsel III
Thane T. Sponsel III

50 Briar Hollow Lane
Suite 370 West
Houston, Texas 77027
Telephone:   (713) 892-5400
Facsimile:   (713) 892-5401
E-mail:        sponsel@smglawgroup.com
                  roger@smglawgroup.com

*Attorney-in-Charge for Plaintiff*
*Ravi Kumararatne*

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
California State Bar No. 175783
Albert Y. Chang
California State Bar No. 296065
Yury A. Kolesnikov
California State Bar No. 271173
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:   (858) 914-2002
E-mail:        fbottini@bottinilaw.com
                 achang@bottinilaw.com
                 ykolesnikov@bottinilaw.com

*Attorneys for Plaintiff Ravi Kumararatne*

42